# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| ANTHONY MORGAN, ) | Case No. |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **COMPLAINT FOR VIOLATIONS** |
| ) | **OF THE FEDERAL SECURITIES** |
| MOMENTIVE GLOBAL INC., LAUREN ) | **LAWS** |
| ANTONOFF, SUSAN L. DECKER, DAVID ) | |
| EBERSMAN, DANA L. EVAN, RYAN ) | JURY TRIAL DEMANDED |
| FINLEY, SAGAR GUPTA, ERIKA H. JAMES, ) | |
| ZANDER LURIE, SHERYL SANDBERG, and ) | |
| BENJAMIN C. SPERO, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Anthony Morgan ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.  This is a stockholder action brought by Plaintiff against Momentive Global Inc. ("Momentive" or the "Company") and the members of Momentive's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell Momentive to an investment consortium led by STG Partners, LLC ("STG") (the "Proposed Transaction").

2.  On March 13, 2023, Momentive entered into an Agreement and Plan of Merger with Mercury Bidco LLC ("Parent") and Mercury Merger Sub, Inc. ("Merger Sub") (the "Merger

Agreement"). Parent and Merger Sub are entities formed by an investment consortium led by STG. Pursuant to the terms of the Merger Agreement, Momentive shareholders will receive $9.46 in cash for each Momentive common share (the "Proposed Transaction").

3.  On April 27, 2023, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Momentive stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor Qatalyst Partners LP ("Qatalyst"); and (iii) potential conflicts of interest faced by Qatalyst and Company insiders.

4.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Momentive stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5.  The special meeting for Momentive stockholders to vote on the Proposed Transaction is currently scheduled for May 31, 2023. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Momentive's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6.  This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.  This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.  Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

9.  Plaintiff is, and has been at all relevant times, the owner of shares of Momentive common stock.

10. Defendant Momentive is a Delaware corporation, with its principal executive offices located at One Curiosity Way, San Mateo, California 94403. Momentive's shares trade on the Nasdaq Global Select Market under the ticker symbol "MNTV."

11. Defendant Lauren Antonoff has been a director of the Company at all relevant times.

12. Defendant Susan L. Decker has been a director of the Company at all relevant times.

13. Defendant David Ebersman has been Chair of the Board and a director of the Company at all relevant times.

14. Defendant Dana L. Evan has been a director of the Company at all relevant times.

15. Defendant Ryan Finley has been a director of the Company at all relevant times.

16. Defendant Sagar Gupta has been a director of the Company at all relevant times.

17. Defendant Erika H. James has been a director of the Company at all relevant times.

18. Defendant Zander Lurie has been Chief Executive Officer and a director of the Company at all relevant times.

19. Defendant Sheryl Sandberg has been a director of the Company at all relevant times.

20. Defendant Benjamin C. Spero has been a director of the Company at all relevant times.

21. Defendants identified in paragraphs 11-20 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

22. Momentive, the maker of SurveyMonkey, provides Software-as-a-Service ("SaaS") solutions to help businesses collect and analyze stakeholder sentiment at scale. The Company has transformed from a provider of digital survey tools sold through the Internet to an enterprise SaaS company that leverages both product-led and sales-led go-to-market motions. In 2022, approximately 38% of Momentive's total revenue was generated from customers who purchased software through the Company's enterprise sales force.

**The Proposed Transaction**

23. On March 13, 2023, Momentive announced that it had entered into the Proposed Transaction, stating, in relevant part:

> **SAN MATEO, Calif.** — **Mar. 13, 2023** — Momentive (Nasdaq: MNTV), the maker of SurveyMonkey, today announced it has entered into a definitive agreement to be acquired by a consortium led by Symphony Technology Group (STG) in an all-cash transaction that values Momentive at approximately $1.5 billion. Under the terms of the agreement, Momentive shareholders will receive $9.46 per share, representing a premium of approximately 28% to the volume weighted average closing price of

4

Momentive stock for the 10 trading days ending on March 13, 2023, and a 46% premium to the company's closing stock price on the day prior to media rumors regarding a potential sale on October 19, 2022.

"This new chapter will enable Momentive to advance our long-term strategy and mission," said Zander Lurie, Momentive CEO. "STG's 20 years of investment experience in software, analytics, and data companies will provide us with invaluable expertise as we scale our customer base and product suite. Today's volatile business climate necessitates that organizations consistently collect feedback from their stakeholders. That's where we shine."

"The transaction is the result of an extensive and careful process to review strategic alternatives by the Momentive board. The board believes this is the right path for delivering certain and attractive value for shareholders," said David Ebersman, chair of the Momentive Board of Directors. "The Momentive board voted unanimously in favor of the transaction."

"SurveyMonkey is the most iconic brand in survey technology and has a terrific reputation among individuals, teams, and enterprises for innovation and leadership, with an impressive combination of incredible ease of use and advanced enterprise capabilities and analytics," said J.T. Treadwell, Managing Director at STG. "We have long admired the company during our 20-year history of active investment in the insights and analytics sector, and are very excited to partner with the team at Momentive to build upon their excellent foundation. Together we will continue delivering exceptional value and innovation to individuals and enterprises globally."

**Approvals and Timing**

The transaction, which was approved unanimously by the Momentive Board of Directors, is expected to close in the second or third quarter of 2023, subject to customary closing conditions, including approval by Momentive shareholders and the receipt of required regulatory approvals. The transaction is not subject to a financing condition.

Upon completion of the transaction, Momentive's common stock will no longer be listed on any public market. The company will continue to operate under the Momentive name and Momentive and SurveyMonkey brands.

**Advisors**

Qatalyst Partners is serving as financial advisor to Momentive in connection with the proposed transaction. Wilson Sonsini Goodrich & Rosati, P.C. is serving as legal counsel to Momentive.

Paul Hastings LLP is serving as legal counsel to STG. Silver Point acted as Sole Lead Arranger and provided committed debt financing in support of the acquisition.

**The Materially Incomplete and Misleading Proxy Statement**

24. On April 27, 2023, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that Momentive stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor Qatalyst; and (iii) potential conflicts of interest faced by Qatalyst and Company insiders.

*Material Misrepresentations and/or Omissions Concerning Momentive's Financial Projections*

25. The Proxy Statement fails to disclose material information concerning the financial projections for the Company.

26. With respect to the Company's April 2022 long-range plan, November 2022 long-range plan and March 2023 long-range plan, the Proxy Statement fails to disclose the projection line items underlying (i) Non-GAAP Operating Income; and with respect to the March 2023 long-range plan, (ii) Unlevered Free Cash Flow.

27. Additionally, the Proxy Statement sets forth that at a March 7, 2023 Board meeting, Momentive management presented to the Board "a draft updated long-range plan for Momentive to reflect headwinds and trends in Momentive's industry and business and the implementation of the workforce reduction plan, which members of Momentive management characterized as an 'upside' case for Momentive's near-term billings growth." Proxy Statement at 58. Following discussion, the Board "requested that Momentive management prepare and present to the Momentive Board an updated plan with alternative scenarios for billings growth that Momentive management had more confidence in achieving." *Id.* The Proxy Statement, however, fails to

disclose a summary of the March 7, 2023 long-range plan, as well as a summary of the alternative scenarios requested by the Board.

*Material Misrepresentations and/or Omissions Concerning Qatalyst's Financial Analyses*

28.     The Proxy Statement fails to disclose material information concerning Qatalyst's financial analyses.

29.     With respect to Qatalyst's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose a quantification of: (i) the terminal values for the Company; (ii) the estimated federal tax savings due to the Company's remaining research and development tax credits for calendar year 2032; (iii) the inputs and assumptions underlying the discount rates ranging from 12.0% to 14.5%; (iv) the Company's cash and cash equivalents as of December 31, 2022; (v) the Company's outstanding debt as of December 31, 2022; and (vi) the Company's fully diluted outstanding shares.

30.     With respect to Qatalyst's *Selected Companies Analysis* and *Selected Transactions Analysis*, the Proxy Statement fails to disclose the individual financial metrics for each of the selected companies and transactions analyzed, respectively.

*Material Misrepresentations and/or Omissions Concerning Qatalyst's and Company Insiders' Potential Conflicts of Interest*

31.     The Proxy Statement fails to disclose material information concerning Qatalyst's potential conflicts of interest.

32.     For example, the Proxy Statement fails to disclose the amount of compensation Qatalyst has received for "act[ing] as a financial advisor to the Company in connection with certain shareholder activism and governance matters." *Id.* at 71.

33.     Additionally, the Proxy Statement fails to disclose the details of the "services previously rendered" for which Qatalyst will be paid $2 million. *See id.*

34. The Proxy Statement also fails to disclose material information concerning Company insiders' potential conflicts of interest.

35. Specifically, the Proxy Statement fails to disclose whether any of STG's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation. The Proxy Statement further fails to disclose the details of all employment and retention-related discussion and negotiations that occurred between STG and Momentive executive officers and directors, including who participated in all such communications, when they occurred and their content.

36. In sum, the omission of the above-referenced information renders statements in the "Unaudited Prospective Financial Information," "Background of the Merger," "Opinion of Qatalyst Partners LP," and "Interests of Momentive's Directors and Executive Officers in the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Momentive will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Momentive**

37. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

38. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made,

omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Momentive is liable as the issuer of these statements.

39. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

40. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

41. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

42. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

43. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

44. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

**Claims for Violation of Section 20(a) of the Exchange Act
Against the Individual Defendants**

45. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of Momentive within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Momentive and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

49. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as

controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Momentive, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.]

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 10, 2023

**OF COUNSEL:**

**ACOCELLI LAW, PLLC**
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

**LONG LAW, LLC**

By */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*